IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TAMMY G., <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CV 24-95-M-KLD <br><br> ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a partially favorable decision by the Commissioner of Social Security on her application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., 1381 et seq.

I.      **Procedural Background**

Plaintiff protectively filed applications for disability and supplemental security benefits on July 7, 2020, alleging disability beginning on April 11, 2020, based on physical and mental impairments. (Doc. 7 at 7, 313-323). Plaintiff's claim was denied initially and on reconsideration. (Doc. 7 at 189-214). On May 24, 2023, Plaintiff appeared with counsel for an administrative hearing in front of an ALJ. (Doc. 7 at 49-85). During the hearing, Plaintiff amended the alleged disability

1

onset date to May 1, 2020. (Doc. 7 at 56). On June 22, 2023, the ALJ issued a partially favorable decision finding that Plaintiff was not disabled between her alleged onset date and March 13, 2022, but was disabled as of March 14, 2022—the date she turned 55 and entered a new age category—through the date of the decision. (Doc. 7 at 40). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated June 22, 2023, the agency's final decision for purposes of judicial review. (Doc. 7 at 6-13, 311-312). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   Legal Standards

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

B.     **Disability Determination**

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a

claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act. At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, the ALJ must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R.

§§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   Discussion

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of May 1, 2020. (Doc. 7 at 24). At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar and cervical spine problems, bilateral lower extremity

neuropathy, right hip/femur fracture with residual pain, and bilateral shoulder problems with pain status post left shoulder manipulation under anesthesia. (Doc. 7 at 24). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment described in the Listing of Impairments. (Doc. 7 at 28).

The ALJ then found that Plaintiff had the residual functional capacity to perform light work "except that [she] is able to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently" with the following limitations:

> The claimant can stand and/or walk four hours in an eight-hour day.[1] The claimant can sit six hours in an eight-hour day. The claimant requires a sit/stand option at 30 to 45-minute intervals for 3 to 5 minutes at a time, during which periods she may remain on task. The claimant may never climb ladders, ropes, and scaffolds. The claimant may occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and ambulate on uneven surfaces. With the upper extremities, the claimant may occasionally reach overhead, and may frequently push, pull, reach in all other directions, handle finger and feel. With the lower extremities, the claimant may occasionally push, pull, and engage in foot pedal operations. The claimant may frequently engage in work activity requiring flexion, extension, and rotation of the neck. The claimant must avoid more than occasional exposure to extreme cold and vibration. The claimant should avoid all exposure to hazards such as dangerous moving machinery and unsecured heights. The claimant requires use of a walker for long distance ambulation.

---

[1] As of September 18, 2022, the claimant was further limited to standing and/or walking for 2 hours in an 8-hour workday with all of the other limitations of the residual functional capacity. The claimant sustained a hip fracture on that date that further narrowed her functional capacity.

(Doc. 7 at 29) (footnote in original). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Doc. 7 at 37). At step five, the ALJ found based on vocational expert testimony that prior to March 14, 2022—while Plaintiff was in the "closely approaching advanced age" category—jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform, such as electronics inspector, electrode cleaner, and electronics worker. (Doc. 7 at 38). But beginning on March 14, 2022—the date Plaintiff entered the "advanced age" category—the ALJ found that Plaintiff was disabled based on direct application of Medical-Vocational Rule 202.06. (Doc. 7 at 40). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Plaintiff argues the ALJ's determination that she was not disabled prior to March 14, 2022, is not supported by substantial evidence. She does not challenge the ALJ's findings at steps one through four of the disability evaluation process but asserts the ALJ made two errors at step five, both of which relate to vocational expert testimony. First, Plaintiff argues the ALJ failed to adequately resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Second, Plaintiff maintains the ALJ erred by accepting the vocational expert's testimony as to the number of jobs available in the national economy.

ALJs routinely rely on the DOT "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). ALJs rely primarily on the DOT for "information about the requirements of work in the national economy." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). ALJs may also use "testimony from vocational experts to obtain occupational evidence." *Massachi*, 486 F.3d at 1153 (citing SSR 00-4p at *2). Uncontradicted vocational expert testimony is inherently reliable and is ordinarily sufficient to support an ALJ's step five findings. *See e.g. Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) (citing *White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022)); *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020).

Vocational expert testimony "generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The ALJ "must elicit a reasonable explanation for the conflict before relying on" the vocational expert's testimony. SSR 00-4p, 2000

WL 1898704, at *2. Neither the DOT nor the vocational expert "automatically 'trumps' when there is a conflict," rather, the ALJ "must resolve the conflict by determining if the explanation" provided by the vocational expert is reasonable and provides a basis for relying on the vocational expert testimony rather than the information in the DOT. SSR 00-4p, 2000 WL 1898704, at *2. A reasonable explanation for a deviation from the DOT may include "[i]nformation about a particular job's requirements" obtained from a vocational expert's "experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704, at *2.

Here, the ALJ asked the vocational expert about a hypothetical claimant with Plaintiff's residual functional capacity, which included, among other limitations: the ability to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; a standing and/or walking limitation of four hours a day; a sitting limitation of six hours a day; and the need for a sit/stand option at 30 to 45 minutes intervals for three to five minutes at a time during which periods the claimant could remain on task. (Doc. 7 at 73-74). The vocational expert identified three "seated light job[s]" that an individual with this residual functional capacity could perform: (1) electronics inspector, DOT 727.687-066, with 34,000 jobs nationally; (2) electrode cleaner, DOT 729.687-014, with 31,000 jobs nationally; and (3) electronics worker, DOT 726.687-010, with 48,000 jobs nationally. (Doc. 7 at 74-75). The ALJ then asked whether the same individual could still perform

these jobs if the individual was limited to only two hours of standing and walking in an eight-hour day, and the vocational expert responded that "they would" and there would be no reduction in the number of positions available. (Doc. 7 at 75-76). The vocational expert explained that these jobs are "seated light jobs" meaning that "once a person is seated, they can continue to work." (Doc. 7 at 75).

All three of the jobs identified by the vocational expert are classified in the DOT as unskilled light work. DOT 727.687-066, 1991 WL 679675; DOT 729.687-014, 1991 WL 679734; DOT 726.687-010, 1991 WL 679633. Light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Additionally, "the full range of light work requires standing and walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Although the full range of light work requires the ability to stand and walk for approximately six-hours in a workday, not all jobs that are classified as light work require standing and walking for that amount of time. For example, SSR 83-10 makes clear that some jobs may be classified as light work if they involve "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." 1983 WL 31251, at *5-6. SSR 83-10 provides a few examples of skilled and semiskilled light jobs that fit within this description, such as a mattress sewing

machine operator, but explains that "[r]elatively few unskilled light jobs are performed in a seated position." 1983 WL 31251, at *5-6.

At the close of the vocational expert's testimony, the ALJ asked him whether his testimony was consistent with the requirements of the DOT. (Doc. 7 at 78). The vocational expert confirmed that it was, testifying as follows: "It's consistent. I did use my work experience in several areas, absenteeism, off-task percentage, standing for two and four hours, using a walker, avoid uneven surfaces, the differentiation between stair and ladder climbing, the overhead reaching and the sit/stand option." (Doc. 7 at 78). The ALJ found that the vocational expert's testimony was reliable given his professional qualifications and was "otherwise consistent with" the information in the DOT. (Doc. 7 at 39).

Plaintiff does not challenge the vocational expert's qualifications, but argues the ALJ failed to adequately resolve an apparent conflict between the DOT's description of the electronics inspector, electrode cleaner, and electronics worker jobs as light-level work and the vocational expert's testimony that the jobs are seated occupations that can be performed by an individual who is limited to standing and walking for two or four hours a day with no reduction in the number of positions. The Court agrees.

The three DOT job descriptions incorporate the general strength requirements of light work. They define light work to mean exerting up to 20

pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly, and further state:

> Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DOT 727.687-066, 1991 WL 679675; DOT 729.687-014, 1991 WL 679734; DOT 726.687-010, 1991 WL 679633.

The vocational expert did not address the second and third categories listed above in his testimony. The DOT job descriptions do not specifically mention "pushing and/or pulling" and the vocational expert offered no testimony on whether the jobs qualify as light work because they involve pushing and/or pulling of arm or leg controls or pushing and/or pulling of materials at a production rate pace. Even if the jobs fall into the latter category, the vocational expert failed to explain how an individual like Plaintiff, who is limited to "frequent" pushing and/or pulling, could engage in "constant" pushing and/or pulling of materials at a production pace.[2]

---

[2] Frequently means the "activity or condition exists from 1/3 to 2/3 of the time" and constantly means the "activity or condition exists 2/3 or more of the time." DOT 727.687-066, 1991 WL 679675; DOT 729.687-014, 1991 WL 679734; DOT 726.687-010, 1991 WL 679633.

With respect to the first listed category, the DOT does not quantify the number of hours of walking or standing per day that is required for a job to involve a "significant degree" of walking or standing. As noted above, the full range of light work requires standing or walking for approximately six hours per day and relatively few unskilled light jobs are performed in a seated position. Because the vocational expert testified that an individual who is limited to two to four hours of walking or standing per day would be able to perform all three jobs, there was an apparent conflict between the vocational expert's testimony and the walking or standing requirements of the DOT. Given this apparent conflict, the ALJ was required to obtain a reasonable explanation from the vocational expert.

Although the ALJ asked the vocational expert whether his testimony was consistent with the DOT, the ALJ did not inquire further. The ALJ did not ask, and the vocational expert did not explain, what it is that allows the electrical inspector, electrode cleaner, and electrical jobs to be performed in a seated manner. The ALJ also did not ask, and the vocational expert did not explain, how the jobs qualify as "light" work if they are performed seated and do not involve pushing and/or pulling of arm or leg controls or pushing and/or pulling of materials at a production rate pace.

The vocational expert's brief statement that his testimony was consistent with DOT did nothing to clarify how Plaintiff would be able to perform the jobs in

13

a seated capacity at the light level. The ALJ simply relied on the vocational expert's professional qualifications to accept his testimony, which is not the same as obtaining a reasonable explanation for the apparent conflict between the DOT job descriptions and Plaintiff's walking or standing limitations. *See Lance Paul E. v. O'Malley*, 2024 WL 1885821, at *6 (D. Idaho Apr. 30, 2024) ("Relying only on the expert's experience or qualifications is not the same as obtaining a reasonable explanation for the conflict."); *Barbour v. Colvin*, 2016 WL 7383351, at *9 (D. Nev. July 29, 2016) ("The ALJ's broad statement concerning the VE's vague experience in placing people in electrical jobs does nothing to clarify how Plaintiff is able to perform the electrical inspector job at the light level."). In doing so, the ALJ failed to adequately resolve the apparent conflict between the vocational expert's testimony and the DOT.

## IV.   Conclusion

Because the ALJ failed to adequately resolve an apparent conflict between the vocational expert's testimony and the DOT, the ALJ's step five findings are not supported by substantial evidence and this matter must be remanded to the Social Security Administration. Plaintiff requests that the Court remand for further consideration of her eligibility for benefits between her alleged onset date and the date she turned 55 and entered a new age category.

Where, as here, outstanding issues must be resolved before a determination

of disability can be made, remand for further administrative proceedings is the proper remedy. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). Because additional questioning by the ALJ could impact the vocational expert's testimony regarding Plaintiff's ability to perform the jobs of electronics inspector, electrode cleaner, and electronics worker, the Court declines to address whether the ALJ also erred by relying on the vocational expert's testimony regarding the number of those jobs that exist in the national economy. Accordingly, and for the reasons discussed above,

**IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings at step five of the sequential evaluation process consistent with this opinion.

DATED this 18th day of September, 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge